UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

D.J.,

          Plaintiff,

     v.

WALNUT CREEK SCHOOL DISTRICT, et al.,

          Defendants.

Case No. 24-cv-02660-LJC

**ORDER GRANTING WALNUT CREEK SCHOOL DISTRICT'S MOTION TO DISMISS**

Re: Dkt. No. 28

## I.    INTRODUCTION

Plaintiff D.J., a minor through his parents as guardians ad litem, asserts claims for failure to accommodate disability under federal law against Defendants Walnut Creek School District (the District) and Spectrum, a private institution where the District placed D.J. under an Individualized Education Plan.  D.J. also asserts related claims for negligence under state law.  Spectrum has answered the Complaint, but the District moves to dismiss the claims against it under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Court held a hearing on February 4, 2025.  For the reasons discussed below, and having considered the parties' papers and arguments, the Court GRANTS the District's Motion, and DISMISSES all claims against the District with leave to amend.  If D.J. wishes to pursue any claims against the District, he may file an amended complaint no later than February 20, 2025.[1]

## II.    BACKGROUND

### A.    Allegations of the Complaint

Because a plaintiff's factual allegations are generally taken as true in resolving a motion to

---

[1] All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c).

dismiss under Rule 12(b)(6), this section summarizes D.J.'s allegations as if true. Nothing in this Order should be construed as resolving any issue of fact that might be disputed.

At the time that he filed his Complaint in 2024, D.J. was a nine-year-old child. Compl. (ECF No. 1) ¶ 1. D.J. has been clinically diagnosed with autism. *Id.* ¶ 28.

When D.J. entered preschool in the District in 2018, his parents informed the District about concerns regarding his communication, safety, "behavioral deficits," and risk of hurting himself. *Id.* ¶ 6. They indicated that he required constant supervision. *Id.* In the 2018 to 2019 school year, the District recorded that D.J. engaged in frequent head-banging, as well as other behavior potentially related to his disability like aggression, "body dropping," and throwing things. *Id.* ¶¶ 7–8. D.J. exhibited similar behaviors when he returned to the District in the 2021 to 2022 school year after pandemic-related closures. *Id.* ¶¶ 9–10.

The District "held an Individualized Education Plan ('IEP') meeting and referred [D.J.] to Spectrum." *Id.* ¶ 11.[2] D.J.'s parents were not previously familiar with Spectrum. *Id.* ¶ 12.

D.J. asserts that he was subjected to "bullying, abuse, neglect, harassment and intimidation, and discrimination" at Spectrum, and sustained physical and emotional injuries. *Id.* ¶ 13. D.J.'s parents noticed bruises on D.J.'s legs starting in August of 2022, followed by additional bruises on his arms and back, and scratches on his forehead. *Id.* ¶ 15. When D.J.'s father asked D.J.'s teacher at Spectrum about the bruises on August 24, 2022, she said that she did not know their cause. *Id.* ¶ 16. D.J. stopped coming home with bruises for a short time thereafter, but had apparent rashes on his hands and back. *Id.*

On August 26, 2022, Spectrum reported an incident in which D.J. dropped to the floor and attempted repeatedly and forcefully to hit his head against the ground while wearing a helmet. *Id.* ¶ 17. The Complaint recites facts stated in a "Behavior Emergency Report," apparently prepared by Spectrum. *Id.* (asserting that "Spectrum reported . . . self-injurious behavior"). Staff members

---

[2] If a public school cannot provide the level of service necessary to accommodate a student's disability, placement in a public or private special education or treatment facility may be part of an IEP to ensure that the student receives access to an appropriate education as required by federal law. *See B.H. v. Manhattan Beach Unified Sch. Dist.*, 35 Cal. App. 5th 563, 571 (2019).

2

intervened by placing their laps and a mat between D.J.'s head and the ground, and by restraining D.J.  *Id.*  D.J. reportedly attempted to pinch, kick, and scratch the staff.  *Id.*  D.J. eventually lay down and closed his eyes in a break area, and staff reportedly continued to monitor him.  *Id.*

The Complaint includes the following unintelligible allegation regarding developments in early September: "On or about September 7, 2022, Defendant WCSD behaviors increased including head banging, aggression, vocalizations, and throwing."  *Id.* ¶ 18 (using the abbreviation "WCSD" to refer to the District).

On September 9, 2022, Spectrum reported another incident of D.J. banging his head against hard surfaces, acting aggressively towards staff, screaming and crying, and repeatedly attempting to remove his helmet.  *Id.* ¶ 19.  D.J. reportedly calmed down after staff members removed his helmet, fanned him, and modeled coping skills for him like squeezing a ball and deep breathing.  *Id.*

On October 24, 2022, Spectrum reported that another student hit D.J.  *Id.* ¶ 20.

On December 12, 2022, D.J. came home from school with cuts to his hand that "resembled deep nail marks."  *Id.* ¶ 21.  D.J.'s father drove to Spectrum to attempt to determine what happened, but D.J.'s teacher had left for the day.  *Id.*  Spectrum's behaviorist Brittany Bailey was occupied for around forty-five minutes trying to load an uncooperative student into transportation to leave the campus, and did not acknowledge D.J.'s father's presence during that time.  *Id.*  When D.J.'s father later spoke to Bailey by telephone, Bailey offered a "hypothesis" that D.J. attempted to take an item from another student, the other student scratched D.J.'s hand, D.J. returned to his desk and sat down, and staff later cleaned the injury with an antibacterial wipe.  *Id.*  Spectrum represented that there were no witnesses to the incident.  *Id.*

When D.J.'s father asked if D.J.'s one-on-one aide Karen Martinez was present for the incident and qualified to work with his disabled son, Bailey "further hypothesized" that Martinez was rotating out to work with another student, but stated that Martinez was qualified for the role.  *Id.*  Soon after, Spectrum replaced Martinez with another aide without informing D.J.'s parents.  *Id.*  Spectrum wrote a report documenting D.J.'s injury the day after it occurred.  *Id.* ¶ 22.

On January 26, 2023, D.J. came home from school "with a dark mark which resembled a

3

1    circle on his hand." *Id.* ¶ 23.  When his mother asked his teacher about it, his teacher said that he

2    had come to school with the injury.  *Id.*  According to D.J.'s Complaint, however, D.J. had not

3    sustained the injury at home.  *Id.*  When D.J.'s mother informed Bailey about that injury, Bailey

4    said that she would investigate, but never followed up.  *Id.*

5         On March 9, 2023, "D.J. came home from Spectrum with a swollen eye, scratches, and

6    bruises on his face and neck."  *Id.* ¶ 24.  Spectrum reported that after staff had asked D.J. to join a

7    group activity, D.J. "responded with loud vocalizations" and "hit the right side of his face against

8    the wall."  *Id.*  Spectrum reported that staff members restrained D.J. until he calmed down and

9    later applied an icepack to the injury on his face.  *Id.*

10        D.J.'s parents did not return him to Spectrum for the remainder of that school year.  *Id.*

11   ¶ 25.

12        D.J. asserts three claims for relief: (1) failure to provide a reasonable accommodation of

13   disability in violation of section 504 of the Rehabilitation Act and Title II of the Americans with

14   Disabilities Act, against the District and Spectrum, *id.* ¶¶ 26–37; (2) "Negligence and Respondeat

15   Superior Liability," against the District, *id.* ¶¶ 38–44; and (3) "Negligent Supervision," against

16   Spectrum and the District, *id.* ¶¶ 45–51.

17        **B.    The Parties' Arguments**

18             **1.    Claims Under Federal Law**

19        The District contends that to the extent D.J.'s first claim seeks declaratory relief, it is

20   barred for failure to exhaust administrative remedies under the Individuals with Disabilities

21   Education Act (IDEA).  ECF No. 28 at 9–10.

22        D.J. argues that he exhausted his IDEA remedies by entering a settlement agreement with

23   the District on August 7, 2024.  ECF No. 40 at 2.  He also contends that his claims here are not

24   subject to the exhaustion requirements because they are not intertwined with the provision of

25   special education governed by the IDEA, but instead could be brought against any public facility.

26   *Id.* at 2–3.

27        In its reply, the District contends that D.J.'s settlement agreement was not alleged in the

28   Complaint, and that as a matter of law, a settlement does not establish exhaustion under the IDEA.

United States District Court
Northern District of California

1    ECF No. 44 at 3.  At the Court's request, the parties submitted supplemental briefs after the

2    hearing addressing whether declaratory relief is a remedy available under the IDEA, such that

3    exhaustion is required.  *See* ECF Nos. 55 (Minutes), 56 (the District's brief), 57 (D.J.'s brief).

4         The District separately argues that D.J. has not identified any reasonable accommodation

5    that he was denied, and that he cannot pursue damages because he has not alleged intentional

6    discrimination.  ECF No. 28 at 11–13.

7         D.J. contends that he has sufficiently alleged a failure to provide reasonable

8    accommodations of constant supervision and a suitable placement that could serve his needs.  ECF

9    No. 40 at 3.  D.J. asserts that he has alleged the District "was aware of the history of abuse and . . .

10   of injury suffered by D.J.," and argues that its failure to act in response establishes intentional

11   discrimination.  *Id.* at 3–4.

12        The district argues in its reply that D.J.'s suggested accommodations are too conclusory to

13   support a claim, that the references to "abuse" in his opposition brief do not fit his allegations of

14   self-harm and being scratched by another student, and that the Complaint does not support an

15   inference of intentional discrimination.  ECF No. 44 at 4–6.

16                    **2.    Claims Under State Law**

17        The District asks the Court to decline to exercise supplemental jurisdiction over D.J.'s state

18   law negligence claims if the Court dismisses his federal claims.  ECF No. 28 at 13.  If the Court

19   reaches the negligence claims, the District argues that they should be dismissed for failure to

20   allege a statutory basis for liability against a government entity, and because the District did not

21   have a duty under state law to supervise Spectrum's education and supervision of D.J.  *Id.* at 14–

22   16.

23        D.J. argues that the District's duty to take reasonable steps to protect its students is non-

24   delegable under state law, and that the District also maintained a duty to ensure that D.J. received

25   adequate supervision.  ECF No. 40 at 4–6.  D.J. contends that the District is also liable under a

26   theory of respondeat superior for the conduct of the District staff member who placed D.J. at

27   Spectrum, asserting the District knew or should have known of "a history of abuse of disabled

28   children" at Spectrum.  *Id.* 6.  D.J. also asserts that "District staff was in a supervisory role at

United States District Court
Northern District of California

5

1    Spectrum and was present and had knowledge of what was occurring with D.J." *Id.*

2         The District contends again in its reply that D.J. failed to allege a statutory basis for

3    liability, and that a school district's duty to supervise students is delegable.  ECF No. 44 at 6–7.

4              **3.    Punitive Damages**

5         Finally, the District contends that punitive damages are not available under the federal laws

6    D.J. invokes, or against the District as a public entity under state law.  ECF No. 28 at 17.  D.J.

7    concedes that punitive damages are not available against the District.  ECF No. 40 at 7.

8    **III.    ANALYSIS**

9         **A.    Legal Standard**

10        A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure

11   "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

12   cognizable legal theory."  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019)

13   (citation and internal quotation marks omitted).  A complaint generally must include a "short and

14   plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

15        A court reviewing a 12(b)(6) motion must "accept all factual allegations in the complaint

16   as true and construe the pleadings in the light most favorable to the nonmoving party."  *Outdoor

17   Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).  "Threadbare recitals

18   of the elements of a cause of action . . . do not suffice," however, and a court need not credit "legal

19   conclusions" or "mere conclusory statements."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

20   (2009).  The allegations in the complaint "must be enough to raise a right to relief above the

21   speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must

22   demonstrate "facial plausibility" by pleading "factual content that allows the court to draw the

23   reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

24   678.

25        A court's review under Rule 12(b)(6) is generally limited to the contents of a complaint,

26   with the exception of materials incorporated by reference in a complaint or materials subject to

27   judicial notice.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

28        A court generally should not dismiss a complaint with prejudice under Rule 12(b)(6)

United States District Court
Northern District of California

6

1    unless it is clear the complaint cannot be saved by any amendment. *See United States v.*

2    *Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). "[L]eave to amend should be freely

3    granted 'when justice so requires.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting

4    Fed. R. Civ. P. 15(a)). Generally, leave to amend may be denied only if allowing the amendment

5    would unduly prejudice the defendant, cause undue delay, or be futile, or if the plaintiff has acted

6    in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

7        **B.        Federal Claims Under the ADA and Rehabilitation Act**

8            Section 504 of the Rehabilitation Act and Title II of the ADA (which was modeled after

9    section 504) both require public schools to provide reasonable accommodations to disabled

10   students to allow them access to public education. *A.G. v. Paradise Valley Unified Sch. Dist. No.*

11   *69*, 815 F.3d 1195, 1203–04 (9th Cir. 2016). Although there are some differences between the

12   two statutes, the parties have not identified any relevant distinctions for the purpose of the present

13   Motion, and courts often analyze the two together. *See id.* at 1203–04 & n.5. "A plaintiff

14   bringing suit under section 504 or Title II of the ADA must show: (1) she is a qualified individual

15   with a disability; (2) she was denied a reasonable accommodation that she needs in order to enjoy

16   meaningful access to the benefits of public services; and (3) the program providing the benefit

17   receives federal financial assistance." *Id.* at 1204 (cleaned up).

18           Of those three basic elements, the District argues only that D.J. has failed to identify a

19   reasonable accommodation that he was denied. The District also argues that D.J. cannot pursue a

20   claim under these statutes for declaratory relief without exhausting the administrative process of

21   the IDEA, and that D.J. cannot pursue damages because he has not sufficiently alleged intentional

22   discrimination.

23       **1.        Reasonable Accommodation**

24           D.J.'s Complaint characterizes his federal claims as based on denial of the reasonable

25   accommodation of "a placement that could serve a child with D.J.'s needs." Compl. ¶ 36; *see also*

26   ECF No. 40 (Opp'n) at 3 ("A placement that could serve D.J. is an accommodation."). If D.J. had

27   not been placed in any sort of special setting, perhaps the denial of such a placement might be

28   enough to state a claim. Here, though, D.J. acknowledges and specifically alleges that he was

United States District Court
Northern District of California

7

"placed in a non-public school designed for students with emotional disturbances and behavior problems." *Id.* ¶ 27. The purported denial of accommodation therefore appears to be a placement *that could serve his needs*, with those needs largely unspecified in the Complaint. While the Court recognizes that a child's repeated injuries are cause for serious concern in any context, for D.J.'s claim to proceed in this action, he must allege the denial of a reasonable accommodation. This element of his claim focuses not on what happened to D.J., but what the District should have done to prevent those injuries. Without a clearer explanation of what Spectrum could and should have done to accommodate D.J.'s disabilities—or in other words, how a sufficient placement would have differed from the placement at Spectrum—the allegation that the District's placement of D.J. at Spectrum did not meet D.J.'s needs resembles a "recital of the elements of" these claims, and is too conclusory to support an inference of liability. *See Iqbal*, 556 U.S. at 677. D.J. cites no case in which generally meeting a child's needs was treated as a reasonable accommodation.

In his opposition brief, D.J. also argues that District denied a reasonable accommodation of constant supervision. ECF No. 40 at 3. Although D.J. does not mention supervision in the portion of his Complaint specifically setting forth his claims for denial of a reasonable accommodation, Compl. ¶¶ 26–37, he alleges elsewhere that his parents informed the District of his need for constant supervision, *id.* ¶ 6. Constant supervision to account for D.J.'s behavioral disability is a more specific request than a "placement that could serve [his] needs." *Cf. id.* ¶ 36.

The District has not explained why—as a matter of law—constant supervision could not be a reasonable accommodation for a child whose autism causes the sort of self-injurious behavior and other behavioral issues alleged in the Complaint. Courts have considered ADA and Rehabilitation Act claims based on similar accommodations, albeit in decisions that did not turn on whether that accommodation was reasonable or actionable. *E.g. Herrera v. L.A. Unified Sch. Dist.*, No. SACV 17-00069 JVS(KESx), 2018 WL 5858717, at *8 (C.D. Cal. July 24, 2018) (considering an asserted accommodation of "one-to-one direction supervision," but holding that the plaintiff failed to show that such supervision was not provided); *Worth S. ex rel. Elizabeth S.G. v. Dallas Indep. Sch. Dist.*, No. 3:20-CV-2776-K, 2021 WL 3130087, at *2 (N.D. Tex. July 23, 2021) (noting "alleg[ations] that one-on-one supervision was not sufficiently provided even after

8

1    subsequent follow-ups," but dismissing for failure to exhaust remedies under the IDEA), *aff'd*, No.

2    21-10849, 2022 WL 6316442 (5th Cir. Oct. 7, 2022).  The District's reply brief all but concedes

3    that constant supervision could be a reasonable accommodation, devoting only one sentence to

4    assert that the "District is not aware of any authority" supporting D.J.'s asserted accommodations,

5    before arguing that "even assuming the request for 'constant supervision' is a request for a

6    reasonable accommodation," D.J. has not sufficiently alleged intentional discrimination.  *See* ECF

7    No. 44 at 4.  The Court concludes that D.J. has sufficiently alleged that his parents requested a

8    reasonable accommodation of constant supervision.

9        D.J. has also sufficiently alleged that a reasonable accommodation of constant supervision

10   was denied in one instance.  Although D.J. was apparently assigned a "one-on-one aide" at

11   Spectrum, he alleges that he was injured in an incident for which "Spectrum represented there

12   were no witnesses."  Compl. ¶ 21.  It is reasonable to infer from that allegation that neither

13   Spectrum nor the District was providing "constant supervision" at the time of the December 12,

14   2022 laceration of D.J.'s hand.

15       It is conceivable that other injuries alleged in the Complaint (e.g., unexplained bruising,

16   Compl. ¶ 16) also might relate to a lack of supervision, but D.J. has not included any allegation

17   that he was unsupervised when he sustained those injuries.  He argues in his opposition brief that

18   "school staff did not know how he obtained the bruises," ECF No. 40 at 3, but his allegation that

19   D.J.'s teacher did not know the source of the bruises does not address whether anyone else at

20   Spectrum was supervising D.J. when he was bruised, *see* Compl. ¶ 16.[3]  For yet other injuries—

21   specifically those where D.J. knocked his head against floors or walls—the Complaint recites

22   Spectrum reports indicating that D.J. was supervised by staff members during those incidents.

23   *E.g.*, Compl. ¶¶ 17, 19, 24.  Similarly, all of the behavioral issues alleged to have occurred before

24   D.J. was placed at Spectrum reflect the District's reports, suggesting that those incidents occurred

25   under the District's supervision—or at least lacking any allegation to the contrary.  *See id.* ¶¶ 7–

26

27   ───────────────

     [3] In the absence of evidence to the contrary, the teacher's lack of knowledge might provide a
28   sufficient basis for D.J.'s parents to allege that he was not supervised, but no such allegation
     appears in the Complaint.

United States District Court
Northern District of California

10.  D.J. has not identified a reasonable accommodation that would have prevented those injuries.

To the extent that D.J.'s ADA and Rehabilitation Act claims against the District are based on the December 12, 2022 injury to his hand, D.J. has sufficiently alleged denial of a reasonable accommodation, and the Court declines to dismiss those claims on that basis.[4]  To the extent those claims are based on other incidents, they are DISMISSED, with leave to amend if D.J. can either identify another accommodation that he was denied or allege that he was unsupervised during those other events.

### 2.    IDEA Exhaustion

Claims against schools for failure to provide reasonable accommodations under the Rehabilitation Act and the ADA sometimes overlap with claims that could have been asserted under the IDEA, which requires schools to provide a free appropriate public education (FAPE) to students with disabilities.  The IDEA sets forth a detailed administrative process for aggrieved students and parents to pursue relief.  *See, e.g.*, 20 U.S.C. § 1415(f), (g).  Although the IDEA does not limit rights available under the ADA and the Rehabilitation Act, plaintiffs must exhaust the procedures available under the IDEA "before the filing of a civil action under such laws seeking relief that is also available under" the IDEA.  20 U.S.C. § 1415(*l*).

Until recently, the Ninth Circuit (and several other courts) had construed the IDEA as requiring exhaustion of any claim related to denial of a FAPE before a plaintiff could pursue such claims under the Rehabilitation Act or the ADA, even if the plaintiff sought damages that would not be available under the IDEA.  *See, e.g.*, *D.D. ex rel. Ingram v. L.A. Unified Sch. Dist.*, 18 F.4th 1043, 1056 (9th Cir. 2021), *vacated*, 143 S. Ct. 1081 (2023).  In 2023, however, the Supreme Court rejected that approach and abrogated decisions so holding.  The Supreme Court concluded instead that the IDEA's "administrative exhaustion requirement applies *only* to suits that 'see[k] relief . . . also available under' IDEA.  And that condition simply is not met in situations . . . where a plaintiff brings a suit under another federal law for compensatory damages—a form of relief

---

[4] The District has not argued that D.J.'s placement with Spectrum under an Individualized Education Plan precludes a claim against the District under the ADA or the Rehabilitation Act for accommodations Spectrum allegedly failed to provide during that placement.  The Court declines to address that issue sua sponte.

United States District Court
Northern District of California

1    everyone agrees IDEA does not provide." *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 147–48

2    (2023) (alterations to internal quotation in original).

3         The District acknowledges the holding of *Luna Perez*, and does not argue here that D.J.

4    was required to exhaust claims for damages.  But the District construes D.J.'s request that the

5    Court "[f]ind that Defendants . . . violated [D.J.'s] rights as an individual with a Disability,"

6    Compl. at 11, ¶ A, as seeking declaratory relief, and argues that such relief is barred by D.J.'s

7    failure to exhaust administrative remedies under the IDEA.

8         Neither party's briefs filed before the hearing meaningfully addressed whether declaratory

9    relief is "also available under" the IDEA, such that it requires exhaustion.  *See Luna Perez*, 598

10   U.S. at 147; 20 U.S.C. § 1415(*l*).  The Court directed the parties to file supplemental briefs

11   addressing "whether declaratory relief is available under the [IDEA] and if so under what statutory

12   provision."  ECF No. 55.

13        The District's supplemental brief asserts that § 1415(f)(3)(E) requires administrative

14   hearing officers "to issue a decision declaring whether a child has received a free appropriate

15   public education ('FAPE')," and that § 1415(i)(2)(C)(iii) "authorizes courts . . . to 'grant such

16   relief as the court determines is appropriate.'"  ECF No. 56 at 2.  According to the District, courts

17   have interpreted the IDEA as authorizing "the full range of equitable remedies," including

18   "declaratory and injunctive remedies."  *Id.* (quoting *Bd. of Educ. of Oak Park & River Forest High*

19   *Sch. Dist. 200 v. Ill. State Bd. Of Educ.*, 79 F.3d 654, 656 (7th Cir. 1996); *Doe v. East Lyme Bd. of*

20   *Educ.*, 790 F.3d 440, 454 (2d Cir. 2015)) (emphasis omitted).

21        In a supplemental brief filed after the District's, D.J. asserts that the "purpose of

22   declaratory relief is to address ongoing or prospective harm when the legal relations between the

23   parties are uncertain" (without citation to authority), while the IDEA's "procedures apply to

24   existing disagreements."  ECF No. 57 at 2.  D.J.'s brief quotes a California regulation

25   (implementing the state's responsibilities under the IDEA), which states that "[d]ue process

26   hearing procedures apply to the resolution of disagreements between a parent and a public agency

27   regarding the proposal or refusal of a public agency to initiate or change the identification,

28   assessment, educational placement, or the provision of special education and related services to

United States District Court
Northern District of California

11

the pupil." *Id.* (quoting Cal. Code Regs. tit. 2, § 60550).

As the District notes, the Seventh Circuit has characterized the IDEA as providing for "the full range of equitable remedies," *Bd. of Educ.*, 79 F.3d at 656, and the Second Circuit has stated that it permits "other declaratory and injunctive remedies, *Doe*, 790 F.3d at 454, although neither of those cases considered a request for declaratory relief. The Court is aware of no Ninth Circuit authority to the contrary.[5]

The Ninth Circuit has long construed the provision of IDEA granting courts authority to award "appropriate relief" as a "grant of jurisdiction to enforce and supplement the administrative procedures for identification, evaluation, and placement of the child, [but] not of authority to award retrospective damages." *Mountain View-Los Altos Union High Sch. Dist. v. Sharron B.H.*, 709 F.2d 28, 30 (9th Cir. 1983). The administrative process includes empowering a "hearing officer" to make a "determination of whether the child received a free appropriate public education." 20 U.S.C. § 1415(f)(3)(E)(i). Judicial declaratory relief as to whether an educational placement was appropriate would naturally "enforce and supplement" such a determination by the hearing officer. *See Mountain View-Los Altos*, 709 F.2d at 30. The Supreme Court has also stated that "'equitable considerations are relevant in fashioning relief'" under the IDEA's "appropriate" relief provision, and that "the court enjoys 'broad discretion' in . . . fashioning appropriate equitable relief." *Florence Cty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 16 (1993) (quoting *Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359, 369, 374 (1985)). Those principles reinforce the conclusion that declaratory relief is available under the IDEA.

The District is also correct that the IDEA administrative process can, in practice, result in findings of failure to provide a FAPE as guaranteed by that statute. In a case that D.J. cites,[6] for example, "the ALJ issued a written decision on whether [a state agency] committed procedural

---

[5] Some district court decisions—not cited by either party here—have stated that the IDEA does not provide for declaratory relief, but without analysis or citation to any authority besides each other. *E.g.*, *Mangum v. Renton Sch. Dist.*, No. C10-1607RAJ, 2013 WL 3280703, at *4 n.1 (W.D. Wash. Jan. 29, 2013); *S.G. v. District of Columbia*, 498 F. Supp. 2d 304, 313 (D.D.C. 2007), *amended on other grounds*, 533 F. Supp. 2d 105 (D.D.C. 2008); *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 29, 32 (D.D.C. 2004). This Court does not find those decisions persuasive.
[6] D.J. cites this case only for its recitation of a state regulation. *See* ECF No 57 at 2.

United States District Court
Northern District of California

violations that resulted in the denial of a FAPE to [a student] during the 2011-2012 and 2012-2013 school years," and concluded that such a denial occurred. *Dep't of Health Care Servs. v. Off. of Admin. Hearings*, 6 Cal. App. 5th 120, 135–36 (2016).

As also discussed below in the context of the *Fry* standard, D.J. could have obtained a decision through the IDEA administrative process as to whether any lack of supervision denied him a FAPE. As discussed above, a court would have authority under the IDEA to enforce or supplement that process through appropriate equitable relief, including declaratory judgment. Because declaratory relief was available under the IDEA, D.J. cannot seek such relief under the Rehabilitation Act or the ADA without exhausting those remedies.

There is some indication that D.J. may have intended to include a prayer for injunctive relief, although no reference to such relief appears in his Complaint. *See* ECF No. 40 (Opp'n) at 1 (asserting in passing that "Plaintiff seeks . . . punitive and injunctive relief against Defendants," before later conceding that punitive damages are not available against the District, and without further discussion of injunctive relief). To the extent D.J. might seek injunctive relief in an amended complaint, that remedy would also require exhaustion, because it is also available under the IDEA. *See Sch. Comm.*, 471 U.S. at 370 ("[I]t seems clear beyond cavil that 'appropriate' relief would include a prospective injunction . . . .").

D.J. further argues that exhaustion was not required because his claim could have been brought against a public facility other than a school. ECF No. 40 at 2–3. Exhaustion is only required if the "gravamen of a complaint against a school concerns the denial of a FAPE," as opposed to "disability-based discrimination" distinct from providing an educational experience appropriate for a student's disability. *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 171 (2017). The Supreme Court has indicated that "a pair of hypothetical questions" is helpful to evaluate that issue:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other

United States District Court
Northern District of California

situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Id.* at 171.

D.J. recites that test in his opposition brief, and contends that his "disability related claims could be brought against a public facility as he was denied access provided to his non disabled peers" and suffered harm that non-disabled students did not experience. ECF No. 40 at 2–3. But he does not explain *how* his claim meets *Fry*'s standard. As discussed above, the core of D.J.'s failure-to-accommodate claim is the alleged failure by Spectrum (on behalf of the District) to provide constant supervision. Public theaters generally have no duty to provide constant individualized supervision for visitors with behavioral disabilities, nor are schools generally required to provide such supervision for their adult employees and visitors. D.J.'s claim is not comparable to the facts of *Fry*, where the Court held that a student was not required to exhaust claims arising from a school's refusal to allow a service dog. 580 U.S. at 175. Exhaustion is therefore required before D.J. could obtain any form of relief under the ADA or the Rehabilitation Act that is also available under the IDEA.

D.J. asserts that he exhausted administrative remedies by entering a settlement with the District in August of 2024. ECF No. 40 at 2. The District correctly notes that no reference to that settlement appears in D.J.'s Complaint. ECF No. 44 at 2. The District is also correct that settlement of a claim does not establish exhaustion under the IDEA. *Paul G. ex rel. Steve G. v. Monterey Peninsula Unified Sch. Dist.*, 933 F.3d 1096, 1102 (9th Cir. 2019) ("Paul then settled the claim against the school district without obtaining any decision on his claim that the lack of in-state placement denied him a FAPE. . . . Thus, as the district court correctly concluded, Paul may not maintain this action after he failed to seek a final administrative decision regarding his alleged need for in-state residential education."); *S.B. ex rel. Kristina B. v. Cal. Dep't of Educ.*, 327 F. Supp. 3d 1218, 1244 (E.D. Cal. 2018) ("[S]ettlement or dismissal of IDEA claims during the administrative process *before* the matter has been heard and a decision issued by the hearing officer does *not* constitute exhaustion.").

14

At the hearing, D.J.'s attorney asserted that the settlement agreement specifically reserved D.J.'s civil rights claims. In the absence of any allegations in the Complaint regarding the settlement agreement, or meaningful briefing regarding that purported reservation of claims, the Court does not reach the question of whether such a reservation can affect the need for exhaustion under the IDEA.

The District's motion to dismiss D.J.'s request for declaratory relief under the ADA and the Rehabilitation Act is GRANTED for failure to allege exhaustion of administrative procedures under the IDEA as required by § 1415(*l*).

### 3. Intentional Discrimination

"[T]o prevail on a claim for *damages* under section 504 and Title II, plaintiffs must prove a *mens rea* of 'intentional discrimination' and that standard may be met by showing 'deliberate indifference,' not only by showing 'discriminatory animus.'" *A.G.*, 815 F.3d at 1204 (cleaned up) (emphasis added). These statutes substantively require provision of a reasonable accommodation regardless of whether it has been intentionally denied, but the remedy of damages is only available upon a showing of intentional discrimination. *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008).

> Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood. The plaintiff establishes the requisite knowledge (or notice) on behalf of the defendant when she shows that she alerted the public entity to her need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation).

*A.G.*, 815 F.3d at 1204 (cleaned up).

Here, D.J.'s parents allegedly informed the District that D.J. required constant supervision. Compl. ¶ 6. But rather than ignore D.J.'s disability or his parents' concerns, the District "held an Individualized Education Plan ('IEP') meeting and referred [D.J.] to Spectrum," *id.* ¶ 11, which apparently assigned him a "one-on-one aide," *see id.* ¶ 21. To the extent that Spectrum may have failed to provide reasonable accommodations after D.J. was placed there, D.J. has not "alleged facts to show that an appropriate [District] official was aware of those occurrences and acted with deliberate indifference in addressing them." *Anenson v. Vacaville Unified Sch. Dist.*, No. 2:20-cv-

1    00901-MCE-DB, 2022 WL 14751910, at *5 (E.D. Cal. Oct. 25, 2022) (dismissing ADA and

2    Section 504 claims for failure to provide sufficient allegations of deliberate indifference, including

3    with respect to an attack by another student).

4        D.J. cites his allegation on information and belief that the District "has and [is]

5    withholding information regarding these behaviors and injuries to D.J. during his time at

6    Spectrum," and that the District "knew or should have known about disabled students alleging

7    experiencing abuse in Non Public placements such as Spectrum."  Compl. ¶¶ 14, 44; *see* Opp'n at

8    3–4.  Those allegations are too conclusory to support this claim.  D.J. does not allege what the

9    District purportedly knew about D.J.'s experience at Spectrum, how or when it obtained such

10   knowledge, or what previous abuse the District knew or should have known occurred at other non-

11   public special education placements—an allegation that is not even specific to Spectrum.

12       D.J. also cites paragraph 18 of his Complaint as indicating that the District "reported

13   increasing self injurious behaviors" while D.J. was at Spectrum, ECF No. 40 at 4, but that

14   paragraph appears to be missing a word, rendering it incomprehensible: "On or about September

15   7, 2022, Defendant WCSD [i.e., the District] behaviors increased including head banging,

16   aggression, vocalizations, and throwing."  Compl. ¶ 18.  Even if D.J. had alleged that the District

17   *reported* those behaviors at that time, it is not clear that such knowledge would place the District

18   on notice of the need for a particular accommodation that was not being provided.

19       At the hearing, D.J.'s attorney asserted that a District psychologist wrote a report

20   documenting D.J.'s injuries at Spectrum, but the District failed to take sufficient action in response

21   to that knowledge.  The Court's review on this Motion is constrained to the Complaint, and no

22   allegations regarding the psychologist or any report prepared by the District appear therein.  The

23   Complaint refers to a Behavior Emergency Report, but this appears to be a report prepared by

24   Spectrum, not a report prepared by a District psychologist.  *See* Compl. ¶ 17.  The Court does not

25   reach the question of whether the facts stated by counsel at the hearing would be sufficient to state

26   a claim for damages.

27       D.J. has not offered sufficient non-conclusory allegations of deliberate indifference by the

28   District to support a claim for damages.  His ADA and Rehabilitation Act claims are therefore

United States District Court
Northern District of California

16

1    DISMISSED to the extent that they seek compensatory damages, with leave to amend.

2                                                 * * *

3          For the reasons discussed above, D.J.'s federal claims under the ADA and the

4    Rehabilitation Act are DISMISSED with leave to amend.

5          **C.      State Law Negligence Claims**

6          D.J.'s second cause of action for "Negligence and Respondeat Superior Liability" asserts

7    that the District and Spectrum failed to meet their duty to supervise D.J., and that the District was

8    negligent in choosing to place D.J. at Spectrum.  Compl. ¶¶ 39–42.  His third cause of action for

9    "Negligent Supervision" asserts that the District "knew or should have known that D.J. was

10   experiencing abuse at Spectrum and changed his placement as well as investigated the situation.

11   *Id.* ¶ 48.

12         The District contends that D.J. failed to identify a statutory basis for liability, as required to

13   bring a claim against a public entity under California law.  ECF No. 28 at 14.  The District is

14   correct that state law only imposes liability on public entities as provided by statute.  Cal. Gov't

15   Code § 815 ("Except as otherwise provided by statute . . . [a] public entity is not liable for an

16   injury.").  Accordingly, although a "school district owes a duty of care to its students because a

17   special relationship exists between the students and the district," "that special relationship does not

18   create liability on its own" in the absence of some statutory basis for liability.  *Brinsmead v. Elk*

19   *Grove Unified Sch. Dist.*, 95 Cal. App. 5th 583, 588 (2023).[7]

20   _____

21   [7] The District asserts that an applicable statute must be identified *in a plaintiff's complaint*.  ECF
     No. 44 at 6.  But even when asserting claims under state law, plaintiffs in federal court "need only
22   satisfy the pleading standard of Rule 8—as interpreted by *Twombly*, *Iqbal*, and other relevant
     precedent—under which a 'complaint need not identify the statutory or constitutional source of the
23   claim raised in order to survive a motion to dismiss.'"  *Zaragoza-Rios v. City of Concord*, No. 18-
     cv-06803-JCS, 2019 WL 2247856, at *5 (N.D. Cal. May 24, 2019) (quoting *Alvarez v. Hill*, 518
24   F.3d 1152, 1157 (9th Cir. 2008)); *see generally Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per
     curiam) (summarily reversing a lower court's dismissal of constitutional claims for failure to cite
25   42 U.S.C. § 1983 specifically in a complaint, because "[f]ederal pleading rules . . . do not
     countenance dismissal of a complaint for imperfect statement of the legal theory supporting the
26   claim asserted).  The District cites one decision from this district as stating that "a claim against a
     public entity like the county must allege a statutory basis for liability," but that case turned on
27   whether the plaintiff's state-law theories of liability had any substantive basis in statute, not
     whether the plaintiff's complaint specifically cited those statutes.  *Wanamaker v. County of Marin*,
28   No. C 15-04058 WHA, 2016 WL 3196567, at *1 (N.D. Cal. June 9, 2016).  The Court therefore
     considers the statutes identified in D.J.'s opposition brief, even though his Complaint does not

United States District Court
Northern District of California

In response, D.J. argues that the "District is [l]iable pursuant to California Education Code Section 44808," ECF No. 40 at 4, and that the District is liable for the acts or omissions of its employees pursuant to California Government Code section 815.2(a).

Section 44808 reads as follows:

> Notwithstanding any other provision of this code, no school district, city or county board of education, county superintendent of schools, or any officer or employee of such district or board shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, unless such district, board, or person has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances.
>
> In the event of such a specific undertaking, the district, board, or person shall be liable or responsible for the conduct or safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee of such district or board.

Cal. Educ. Code § 44808.

The District does not address section 44808 in its reply, and D.J. does not address the fact that this statute—on its face—is primarily a limitation of a liability, not an imposition of it. To the extent that it imposes liability, it does so only in the event of a "specific undertaking" of a school-sponsored off campus activity, and only "while such pupil is or should be under the immediate and direct supervision of an employee of [the school] district or board." *See id.*

As alleged in the Complaint, the district had referred D.J. under an IEP for special education at Spectrum, a non-public institution. According to an unpublished state court decision cited by both parties, a school district's duty to supervise students is delegable under such circumstances. *Dorlac v. Clairmont Acad.*, No. B184314, 2007 WL 1747982, at *5 (Cal. Ct. App. June 18, 2007). D.J. has not alleged facts showing that the District exercised a degree of control over Spectrum sufficient to treat Spectrum as anything other than an independent contractor. *Cf.*

---

reference them specifically.

1  *id.* (stating the court's "assumption," perhaps for the sake of argument, that the private special

2  education school at issue was equivalent to a public school within the defendant school district,

3  based on specific facts regarding the school district's control over the private school).  D.J.

4  therefore has not alleged that he "[was] or should [have been] under the immediate and direct

5  supervision of an employee of" the District during his time at Spectrum.  *Cf.* Cal. Educ. Code

6  § 44808.  No basis for liability is apparent under that statute.

7          Section 815.2 provides that public entities can be held liable for their employees' conduct,

8  to the same extent as those employees.  Cal. Gov't Code § 815.2(a) ("A public entity is liable for

9  injury proximately caused by an act or omission of an employee of the public entity within the

10  scope of his employment if the act or omission would, apart from this section, have given rise to a

11  cause of action against that employee . . . .").  The District's counsel acknowledged at the hearing

12  that public entities can be held liable for their employees' negligence under section 815.2.

13          That said, the Complaint does not include any allegations regarding the conduct of any

14  particular employee of the District.  Even taking as true D.J.'s assertions that the District as an

15  entity should have known that D.J. was not properly supervised or lacked reasonable

16  accommodations—allegations that are themselves likely too conclusory to warrant such

17  deference—the Complaint does not support a plausible inference that an individual employee of

18  the District was negligent, such that liability against the District could attach under section 815.2.

19  At the hearing, D.J.'s counsel asserted that a District psychologist acted negligently in failing to

20  take action despite awareness of D.J.'s injuries at Spectrum.  But the Court's review of a motion

21  under Rule 12(b)(6) is generally limited to the allegations of a plaintiff's complaint, and no

22  reference to the District's psychologist appears therein.

23          D.J. has not identified any other statutory basis for liability against the District.  His state-

24  law claims are therefore DISMISSED with leave to amend.

25          **D.    Punitive Damages**

26          D.J. concedes that he cannot pursue punitive damages against the District.  ECF No. 40 at

27  7.  The District's Motion is GRANTED as to such damages, without leave to amend.

28

left margin: United States District Court / Northern District of California

19

IV.     **CONCLUSION**

For the reason discussed above, the District's Motion to Dismiss is GRANTED, and all claims against the District are DISMISSED, with leave to amend except as to punitive damages. D.J. may file an amended complaint no later than February 20, 2025.

**IT IS SO ORDERED.**

Dated: February 6, 2025

_____
LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California

20