1

2

3

4                                    UNITED STATES DISTRICT COURT

5                                   NORTHERN DISTRICT OF CALIFORNIA

6

7    D.J.,                                          Case No.  24-cv-02660-LJC

8                    Plaintiff,

9           v.                                      **ORDER REGARDING WALNUT
                                                    CREEK SCHOOL DISTRICT'S
10   WALNUT CREEK SCHOOL DISTRICT,                  MOTION TO DISMISS FIRST
     et al.,                                        AMENDED COMPLAINT**

11                   Defendants.                    Re: Dkt. No. 63

12

13   **I.      INTRODUCTION**

14          Plaintiff D.J., a minor suing through his guardian ad litem, brings claims against

15   Defendants Walnut Creek School District (the District) and Spectrum, a private institution where

16   the District placed D.J. under an Individualized Education Plan, asserting that the District and

17   Spectrum failed to accommodate D.J.'s autism.[1]  The Court previously granted a motion to

18   dismiss D.J.'s claims against the District with leave to amend, D.J. filed an amended complaint

19   renewing his claims against the District under Section 504 of the Rehabilitation Act and Title II of

20   the Americans with Disabilities Act (ADA), and the District moves once again to dismiss.  The

21   Court found the District's present Motion suitable for resolution without oral argument and

22   vacated the hearing previously set for April 15, 2025.  ECF No. 76.  For the reasons discussed

23   below, the District's Motion is GRANTED, and all claims against the District are DISMISSED

24   with leave to amend no later than April 29, 2025.[2]

25

26

27   [1] D.J. also briefly asserted claims against Amy Espinoza, a District employee, but has since
     voluntarily dismissed all claims against Espinoza.  *See* ECF Nos. 73, 74.

28   [2] The parties have consented to the jurisdiction of a magistrate judge for all purposes pursuant to
     28 U.S.C. § 636(c).

United States District Court
Northern District of California

United States District Court
Northern District of California

## II.    BACKGROUND

The Court previously dismissed D.J.'s federal claims against the District on the following grounds: (1) failure to allege denial of reasonable accommodation in violation of the ADA and the Rehabilitation Act, except as to a single incident on December 12, 2022, ECF No. 58[3] at 7–10; (2) failure to exhaust remedies under the Individuals with Disabilities Education Act (IDEA), as required to pursue equitable relief other than damages, *id.* at 10–15; and (3) failure to allege intentional discrimination, which could include deliberate indifference, as required to recover compensatory damages, *id.* at 15–17.  The Court also dismissed D.J.'s state law claims and request for punitive damages against the District, *id.* at 17–19, which D.J. has not renewed in his First Amended Complaint (FAC, ECF No. 58).

The District's present Motion turns on whether the First Amended Complaint sufficiently alleges deliberate indifference to pursue a claim for damages under the Rehabilitation Act and the ADA.  Although the District also raised arguments regarding claims under state law, D.J. has clarified that his First Amended Complaint does not assert such claims against the District, which is consistent with the manner in which the First Amended Complaint presents his claims.  *See* ECF No. 69 at 4–5 (explaining that the District "is not the subject of a state law claim").

Much of the First Amended Complaint is similar to the original Complaint summarized in the Court's previous Order.  *See* ECF No. 58 at 1–4.  In brief, D.J. alleges that he has been clinically diagnosed with autism; his parents informed the District that he required constant supervision; the District reported D.J. exhibiting behavioral issues like wandering the classroom, eloping from his assigned tasks, and banging his head on surfaces when he was a student at the District; the District referred D.J. to Spectrum (a non-public school) under an individualized education plan; and D.J. experienced multiple injuries at Spectrum due to inadequate supervision and abuse by other students.

The First Amended Complaint adds an allegation that District employee Amy Espinoza

---

[3] *D.J. v. Walnut Creek Sch. Dist.*, No. 24-cv-02660-LJC, 2025 WL 416164 (N.D. Cal. Feb. 6, 2025).  Citations herein to documents filed in the docket, including this previous Order, refer to page numbers as assigned by the Court's ECF filing system unless otherwise noted.

United States District Court
Northern District of California

1    "knew or should have known the history of student abuse that Spectrum has a history of," FAC

2    ¶ 43, but does not explain what that history was or how Espinoza should have known of it.  *See*

3    *also id.* ¶ 52 (asserting that Espinoza "knew or should have known that Spectrum had a history of

4    abuse towards children with disabilities attending its program").

5         The First Amended Complaint also quotes three Behavior Emergency Reports (BERs)

6    prepared by Spectrum.  The Court assumes for the sake of argument that D.J. has sufficiently

7    alleged the District was aware of these reports.  *See* FAC ¶ 52 (asserting that "the reports from

8    Spectrum detailing injuries D.J. suffered at school, was [sic] notice to Ms. Espinoza that D.J. was

9    experiencing harm at Spectrum," without specifying which reports or clearly alleging that

10   Spectrum shared them with Espinoza).

11        First, on August 26, 2022, Spectrum reported that D.J. attempted to hit his head forcefully

12   against the ground while wearing his helmet, and that Spectrum responded as follows:

> Staff placed their lap between his head and the ground and then brought over the mat to continue to block access to banging his head. D.J. continued to attempt self-injurious behavior, and staff Brittany [Bailey, Spectrum Behaviorist] placed D.J. in a CPI medium child's control hold to prevent him from hurting himself. D.J. continued to attempt to squirm out of the hold and head banged into the staff member's chest twice. Staff released the hold to prevent injury to D.J. as he had turned his body to be parallel to the ground. He attempted to hit his forehead on the ground. Brittany placed D.J. in another CPI approved medium child's control hold. He attempted to pinch and kick, scratch his staff, while yelling/crying. After he stopped attempting to engage in aggression and SIB, staff released the hold. Staff placed a mat beneath his body and he turned to the side. He gently directed staff's hands to his head and she provided squeezes on his head/shoulders. He stated, "tired," and continued to lay on the mat. Staff brought over a break visual and said, "If you need a break, tell me break." His staff waited for 5 seconds, modeled pointing at the break card, and waited another 5 seconds. D.J. required partial physical prompting to touch the break card. He stood up with his staff, walked over to the break area, laid down on a pillow and closed his eyes. Staff continued to monitor D.J. for safety.

24   FAC ¶ 17 (brackets in original).

25        Second, on September 9, 2022, Spectrum reported:

> He began to scream and cry, and bang his head on hard surfaces (floor, window, against staff). Staff blocked attempts and D.J. began to lay down instead without banging his head. When staff attempted to provide the instruction again, "If you want to go outside, you need shoes on." He grabbed his shoes and then put them into his backpack.

3

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

He continued to cry/scream, lay down, stomp his feet on the ground. He would sit up and reach for staff. Staff provided body squeezes, tapped the bottoms of his feet, however, D.J. would head butt and then kick after a few seconds. Staff offered known preferred items, and he screamed "all done." He started to attempt to remove his helmet. He was successful a couple of times, and the helmet was placed back on his head each time. He continued to attempt to hit his head against the door, window, and floor. Staff placed her body between him and the hard surfaces. He grabbed staffs clothing, scratched, and attempted to hit and kick. His head banging attempts were not decreasing. In order to prevent further injury and attempt to de-escalate D.J. (based on information that he likes big bear hugs when he is engaging in these behaviors}, staff used a CPI approved high child's seated hold. D.J. laid down on the floor and staff released. After about 10 seconds, he stood up and tried to run and hit his head hard against the window. Staff used another high level child's standing hold to prevent D.J. from engaging in self-injurious behavior. Staff released after 1 minute. D.J. continued to attempt to remove his helmet. We gave him a helmet break and fanned him. We realized that the options we were giving him to help de-escalate were not effective. We thought that the helmet was causing his distress, and once it was removed, he sat up and had more calm behavior. We fanned his head area, and after a few seconds staff stopped after a brief countdown (e.g., 3 ... 2 ... 1...). Staff gave D.J. a choice of more fan or all done. He said, "Fan," and staff repeated this procedure a couple more times. D.J. continued to show signs of calm. Staff offered him a choice of break or check schedule, paired with visual icons. D.J. tapped the break icon and was given a break. He walked over to the break area, and requested "squishy" (a soft/squeezable toy}. Staff provided access to the squishy item in the break area, and D.J. continued to be calm. Staff brought over his coping skills visuals and modeled the action associated with the picture.

17

18

19

20

D.J. participated in counting to 10, squeezing a ball, and observed staff modeling deep breaths. He was offered a choice of more or all done practice, and he independently said, all done. After that staff evaluated D.J. for any injuries. There is redness on his neck, which is hypothesized to be from the velcro strap of his helmet. In staff attempts to keep it on, it may have rubbed along his neck and caused irritation. No first aid was required.

21

FAC ¶ 19 (mismatched parentheses in original).

22

And third, on March 9, 2023, Spectrum reported:

23

24

25

26

27

28

D.R. [sic, apparently referring to D.J.] was verbally prompted to join the morning group. D.R. responded with loud vocalizations. Staff offered D.R. 3 extra minutes in his seat, before joining group. After 3 minutes, Staff prompted D.R. to join group a second time. D.R. turned toward staff and hit the right side of his face against the wall. To maintain student safety, Staff implemented a CPI approved medium seated hold while an auxiliary staff assisted in applying D.R.'s helmet. Staff told D.R. that his expectation was to have a calm and safe body. After approximately 4 minutes, D.R. showed a calm body and was released. Staff set a 5-minute timer for D.R. before joining the group. After the 5 minutes, D.R. joined group. Upon observation,

4

United States District Court
Northern District of California

1
2

> Staff noticed a redness and a scrape on the right side of D.R.'s face. To prevent swelling, Staff applied an icepack. Staff documented this injury in the 'Daily Body Check Form.'

3  FAC ¶ 24.

4      One sentence of the First Amended Complaint seems to reference a joint report by

5  Spectrum and the District, but that sentence—apparently adapted from an unintelligible version in

6  the original Complaint, *see* Compl. (ECF No. 1) ¶ 18; ECF No. 58 at 3—still reads like an

7  unfinished draft:

8
9

> 18. On or about September 7, 2022, Defendant [the District] and Spectrum reported D.J's X behaviors increased including head banging, aggression, vocalizations, and throwing."

10  FAC ¶ 18 (unmatched quotation mark in original).

11      As compared to the original Complaint, the First Amended Complaint adds a long list of

12  potential accommodations that should have been provided to D.J.  FAC ¶ 33.  Several of those

13  accommodations use a specific person's name—apparently either referencing D.J. by name rather

14  than by his initials in violation of Rule 5.2(a) of the Federal Rules of Civil Procedure, or referring

15  to someone else entirely.  *Id.*  In an abundance of caution, the First Amended Complaint is hereby

16  SEALED provisionally.  If the name used in paragraph 33 is D.J.'s name (in violation of Rule

17  5.2(a)), then D.J. is **ORDERED** to file a corrected or redacted version of the First Amended

18  Complaint to complete the public record no later than April 17, 2025.  If it is not D.J.'s name, then

19  D.J. shall file a status report with a clarification regarding the identity of the named person by the

20  same deadline.

21  **III.    LEGAL STANDARD**

22      A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure

23  "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

24  cognizable legal theory."  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019)

25  (citation and internal quotation marks omitted).  A complaint generally must include a "short and

26  plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

27      A court reviewing a 12(b)(6) motion must "accept all factual allegations in the complaint

28  as true and construe the pleadings in the light most favorable to the nonmoving party."  *Outdoor*

1    *Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).  "Threadbare recitals

2    of the elements of a cause of action . . . do not suffice," however, and a court need not credit "legal

3    conclusions" or "mere conclusory statements."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

4    (2009).  The allegations in the complaint "must be enough to raise a right to relief above the

5    speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must

6    demonstrate "facial plausibility" by pleading "factual content that allows the court to draw the

7    reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

8    678.

9         A court's review under Rule 12(b)(6) is generally limited to the contents of a complaint,

10   with the exception of materials incorporated by reference in a complaint or materials subject to

11   judicial notice.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

12        A court generally should not dismiss a complaint with prejudice under Rule 12(b)(6)

13   unless it is clear the complaint cannot be saved by any amendment.  *See United States v.*

14   *Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).  "[L]eave to amend should be freely

15   granted 'when justice so requires.'"  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting

16   Fed. R. Civ. P. 15(a)).  Generally, leave to amend may be denied only if allowing the amendment

17   would unduly prejudice the defendant, cause undue delay, or be futile, or if the plaintiff has acted

18   in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

19   **IV.    ANALYSIS**

20        The only issue in dispute on the present Motion is whether D.J. has sufficiently alleged

21   deliberate indifference by the District for the purpose of his claims under the Rehabilitation Act

22   and the ADA.

23        Section 504 of the Rehabilitation Act and Title II of the ADA (which was modeled after

24   section 504) both require public schools to provide reasonable accommodations to disabled

25   students to allow them access to public education.  *A.G. v. Paradise Valley Unified Sch. Dist. No.*

26   *69*, 815 F.3d 1195, 1203–04 (9th Cir. 2016).  Although there are some differences between the

27   two statutes, the parties have not identified any relevant distinctions for the purpose of the present

28   Motion, and courts often analyze the two together.  *See id.* at 1203–04 & n.5.  "A plaintiff

United States District Court
Northern District of California

6

1   bringing suit under section 504 or Title II of the ADA must show: (1) she is a qualified individual

2   with a disability; (2) she was denied a reasonable accommodation that she needs in order to enjoy

3   meaningful access to the benefits of public services; and (3) the program providing the benefit

4   receives federal financial assistance." *Id.* at 1204 (cleaned up).

5          The District does not dispute any of those basic elements for the purpose of the present

6   Motion.  But "to prevail on a claim for *damages* under section 504 and Title II, plaintiffs must

7   prove a *mens rea* of 'intentional discrimination' and that standard may be met by showing

8   'deliberate indifference,' not only by showing 'discriminatory animus.'" *A.G.*, 815 F.3d at 1204

9   (cleaned up) (emphasis added).  These statutes substantively require provision of a reasonable

10  accommodation regardless of whether it has been intentionally denied, but the remedy of damages

11  is only available upon a showing of intentional discrimination.[4]  *Mark H. v. Lemahieu*, 513 F.3d

12  922, 938 (9th Cir. 2008).

> Deliberate indifference requires both knowledge that a harm to a
> federally protected right is substantially likely, and a failure to act
> upon that likelihood. The plaintiff establishes the requisite knowledge
> (or notice) on behalf of the defendant when she shows that she alerted
> the public entity to her need for accommodation (or where the need
> for accommodation is obvious, or required by statute or regulation).

13

14

15

16

17  *A.G.*, 815 F.3d at 1204 (cleaned up).

18         Even where such notice has been provided, "a failure to act must be more than negligent,"

19  and instead must "involve[] an element of deliberateness." *T.B. ex rel. Brenneise v. San Diego*

20  *Unified Sch. Dist.*, 806 F.3d 451, 469 (9th Cir. 2015) (quoting *Duvall v. County of Kitsap*, 260

21  F.3d 1124, 1139 (9th Cir. 2001)). "[B]ureaucratic slippage that constitutes negligence rather than

22  deliberate action or inaction" is not sufficient.  *Duvall*, 260 F.3d 1124, 1139 (9th Cir. 2001).

23         To the extent D.J. relies on a premise that the District "fail[ed] to design reasonable

24  accommodations for D.J. *before* sending him to Spectrum," *see* ECF No. 69 at 2 (emphasis

25  added), such a theory is difficult to discern from his First Amended Complaint, where D.J.'s

26

27  [4] The Court understands D.J.'s First Amended Complaint as seeking *only* damages against the
    District, any not any equitable relief that would not require deliberate indifference but might
28  require exhaustion under the IDEA.  *See* FAC at 13, ¶ A (naming only Spectrum and the now-
    dismissed individual defendant in the portion of the Request for Relief seeking declaratory relief).

*United States District Court*
*Northern District of California*

1    federal claims begin with the allegation that he "was placed in a non-public school [i.e., Spectrum]

2    designed for students with emotional disturbances and behavior problems."  FAC ¶ 27.  But

3    regardless of whether the First Amended Complaint sufficiently put the District on notice that its

4    pre-Spectrum conduct is at issue, it also lacks any meaningful allegations regarding the degree of

5    supervision or other accommodations that the District did or did not provide while D.J. remained

6    at a District school.  The First Amended Complaint therefore lacks sufficient factual allegations to

7    support a plausible claim that the District acted with deliberate indifference to D.J.'s disability

8    during that time.

9        For the period when D.J. attended school at Spectrum, D.J. relies on paragraph 43 of his

10   FAC, which asserts that the District's employee Amy Espinoza "knew or should have known the

11   history of student abuse that Spectrum has a history of."  FAC ¶ 43; *see* ECF No. 69 at 4 (citing

12   FAC ¶ 43).[5]  But the First Amended Complaint includes no allegations of what that "history of

13   student abuse" entailed, whether it related in any way to D.J.'s disability or his experience at

14   Spectrum, or how Espinoza "knew or should have known" of it.  *See* FAC ¶ 43.  For a claim with

15   a mens rea requirement (here, intent or deliberate indifference), a bare assertion that a defendant

16   "knew or should have known" of a risk, *see id.*, is the sort of "[t]hreadbare recitals of the elements

17   of a cause of action" and "mere conclusory statement[]" that does not suffice to state claim—

18   particularly where there is no allegation of *what* abuse Espinoza purportedly should have known

19   about.  *See Iqbal*, 556 U.S. at 678–79; *see also Pantell v. Antioch Unified Sch. Dist.*, No. C 14-

20   1381 PJH, 2015 WL 757612, at *6, *8 (N.D. Cal. Feb. 20, 2015) (holding mere "assert[ions] that

21   [a school district] had knowledge of previous claims of harm and abuse suffered by special needs

22   children they had sent to [a non-public special education school]" insufficient in the absence of

23   alleged "*facts* showing any actual knowledge of any abuse" (emphasis added)); ECF No. 58 at 16

24   (holding similar allegations in D.J.'s original Complaint "too conclusory to support this claim").

25

---

26   [5] It is perhaps worth noting that this allegation appears only in a portion of the First Amended
     Complaint asserting a state law claim against Spectrum and the since-dismissed individual
27   defendant Espinoza.  D.J.'s federal claims against the District "incorporate the [preceding]
     allegations of paragraphs 1-25 as if fully set forth [t]herein," FAC ¶ 26, but do not purport to
28   incorporate the subsequent allegations of the state law claims that D.J. declined to pursue against
     the District.  The Court does not, however, rely on that technicality as a basis for dismissal.

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1          D.J. also asserts in his opposition brief that the District "did not plan for D.J. to have

2   constant supervision" at Spectrum, ECF No. 69 at 4, but he does not cite any allegation to that

3   effect in his First Amended Complaint.  To the extent the District's knowledge of reports from

4   Spectrum might be at issue, all of the reports quoted in the First Amended Complaint indicate that

5   Spectrum staff members responded to D.J.'s behavioral issues.  There is insufficient indication

6   from those reports that D.J. lacked supervision, and they do not on their face support a reasonable

7   inference that the District acted with deliberate indifference to D.J.'s need for accommodation by

8   allowing him to remain at Spectrum.  Knowledge that a student with a disability exhibited

9   behavioral issues does not in itself support an inference of deliberate indifference, particularly

10   where the reports indicated that Spectrum staff responded to each issue.  There are no allegations

11   elsewhere in the First Amended Complaint that, when read alongside the quoted portions of the

12   reports, support an inference that the District acted with deliberate indifference.

13          Whether those reports paint an accurate and complete picture of D.J.'s treatment at

14   Spectrum is a different question.  *Cf.* FAC ¶¶ 21, 23 (alleging that Spectrum provided

15   unsatisfactory or inaccurate explanations of injuries D.J. sustained at school).  But D.J.'s

16   allegations—distinct from the reports that Spectrum might have shared with the District—that

17   *Spectrum* may have failed to supervise D.J. sufficiently do not in themselves show that *the District*

18   acted with deliberate indifference to D.J.'s disability.

19          The District's Motion to Dismiss is therefore GRANTED.  Because it is not clear that

20   leave to amend would be futile, the Court will allow D.J. a final opportunity to amend his claims

21   against the District.  If D.J. continues to pursue damages under the Rehabilitation Act and the

22   ADA, he must include sufficient non-conclusory factual allegations to support an inference that

23   the District acted with deliberate indifference to D.J.'s disability.

24   **V.     CONCLUSION**

25          For the reasons discussed above, the District's Motion to Dismiss is GRANTED.  If D.J.

26   wishes to pursue claims against the District, he may file a second amended complaint no later than

27   April 29, 2025.

28          As noted above, D.J. is also ORDERED to file no later than April 17, 2025 either: (1) a

United States District Court
Northern District of California

1   redacted or corrected version of his First Amended Complaint if the current version includes

2   D.J.'s name in the list of accommodations at paragraph 33, in violation of Rule 5.2(a) of the

3   Federal Rules of Civil Procedure; or (2) a status report explaining whose name appears in that

4   paragraph.  The First Amended Complaint is provisionally SEALED pending that filing.

5          Finally, as a housekeeping matter, the docket indicates that the parties inquired with Judge

6   Ryu or her clerk regarding an extension of the April 30, 2025 ADR deadline, and Judge Ryu's

7   clerk instructed the parties on March 17, 2025 "to file a stipulation and proposed order to that

8   effect for Judge Cisneros's consideration."  ECF No. 68.  No such stipulation has been filed.  If

9   the parties seek an extension of the deadline to complete their settlement conference, they must

10  file such a request no later than April 22, 2025.

11         **IT IS SO ORDERED.**

12  Dated: April 15, 2025

13

14  _____

15  LISA J. CISNEROS
    United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

10